And on video, you can sit down as well, because we're just, there we go. Good morning, everyone. Welcome to the Ninth Circuit. We have a few matters on calendar today. The first one will be in part by video and part in person. Something I always say is on our court, there are no bonus points or extra credit for using all of your time. So if you make your points and you're not getting a lot of questions back, or maybe no questions back, it's okay to sit down. There's nothing wrong with that. And with that, I'll call the first case. Counsel, I just want to make sure on video, Mr. Masucci, can you hear us okay? I can hear you fine. All right. Go ahead. So the first case on calendar is Kumar v. Garland. Mr. Masucci, you may proceed. Thank you. May it please the court, Thomas Masucci representing Mr. Aman Kumar. First, very briefly, thank you for accommodating my request to appear remotely. Sure. This argument below, primarily before the BIA, but also in our brief centered on credibility, I'd like to briefly address some of the points we made, starting with demeanor, which is generally the least assailable aspect of an agency's credibility finding. I would say, as I argued in the brief, the demeanor finding here is problematic. The government characterizes the demeanor issues as my client giving evasive answers and being non-responsive about facts central to his asylum claim. However, I would say, unfortunately, a review of the record shows Mr. Kumar being confused and unfocused at a lot of different points along the way, even when dealing with basic housekeeping issues at the very beginning of the hearing, Administrative Record 99-107. So unlike many cases where a judge will point out that client was perfectly responsive on direct and then kind of flubbed it when he was challenged on cross or by the IJ, that's certainly not the case here. I'll also note that the record shows that some of the questioning to which Mr. Kumar was not answering in a linear way, some of the questioning itself was a little confusing. I'll point to page 138 of the record where the IJ is asking about the different spellings of the church and the respondent says, because he's the pastor, which seems clearly non-responsive, but then Mr. Kumar's attorney jumps in and says, well, your honor, I don't think he got the question. And the judge says, well, why not? And well, because he was asking him about something that was obviously not in his realm of understanding, these documents. The other demeanor issue, of course, is eye contact. A lot of that was, there was a lot of that stress by both the IJ and the board. And the government suggested in its brief that we thought that the judges questioning him directly, this is at 117 in the administrative record, was inappropriate. Now, I wouldn't say it was inappropriate. I was just, what I was arguing there was that the kind of direct questioning that the judge was posing to Mr. Kumar about the angle of his eyes and how he looked or didn't look at other people in his life probably missed the point. And I use the term baked in cultural factors that Mr. Kumar probably isn't even really aware of. And this, I think, is especially important considering that he was and remains a member of the untouchable cast in India, where I think, you know, the deference to authority is a very dominant theme. Counsel, let me jump in here for a moment. Let's assume the panel, and I have no idea, but let's assume the panel would agree with you that maybe one or two of the reasons provided for adverse credibility don't hold up on appeal. But let's say the other two do. I think there were four grounds. Let's say you're right on two and they're right on two. What do we do in that situation? I would suggest remanding it back to get the two issues that the agency was wrong on, give them an opportunity to get it right. Now, I know there are four issues. I happen to think that the government, that the agency was, their strongest case had to do with the timing of his conversion to Christianity. But with regard to demeanor and regard to these documentary issues, which are in the record and we can't run away from them, I really don't think those cogently can be tied to credibility. They can certainly be tied to the reliability of the documents. But, you know, the agency couched this in terms of these are discrepancies for which he did not provide satisfactory explanations. What we were really questioning with regard to those three areas was, you know, are those discrepancies really there in any meaningful way? Can they be pinned on Mr. Kumar as an indicia of lack of credibility? Well, you know, I agree with you that on the, I'll call it the spelling issue. That's not the government's strongest argument, which is why I want to say, so let's say we agree with you on the demeanor and we agree with you on the spelling. But the other two, maybe the government has a point. You think the remedy at that point, we would need to send it back for the BIA to reassess whether there's still an adverse credibility finding and lie the fact that we reject one or more of those? Well, the court would determine that, you know, the erroneous positions of the agency that the court could conclude that it's normal error. I, however, would urge the court not to do that. And again, I think the weakest part of the agency's credibility analysis is the Reverend Pastor nomenclature. Counsel, let's flip to the other side of the coin. Tell us your best argument to say that this record compels the conclusion that your client is entitled to relief. Your Honor, the, I believe that overall the agency's fact finding with regard, particularly with regard to credibility, is seriously flawed. And in light of that, its assessment of his corroborating evidence as it was dependent upon the finding or assumed the finding of no credibility also is erroneous. And so based upon that, I would argue that the most compelling argument I can come up with is that the agency should consider corroboration and also burden of proof in light of a credibility finding that this court would vacate. Thank you. All right. Do you want to reserve your remaining time? Oh, that's fine, Judge. Thank you. Good morning. May it please the court. Jonathan Needle, Department of Justice, on behalf of the respondent. We submit that substantial evidence supports the agency's finding that the petitioner was not a credible witness and that he therefore failed to establish his entitlement to asylum and related protection. The credibility determination was based on clear discrepancies and irregularities in the record, casting significant doubt on the petitioner's claim that he suffered religious persecution after his alleged conversion to Christianity. Do you think misspelling the name of the church he says he attended is a serious reason for denying relief? Well, Your Honor, we submit that this is not merely— Can you start with a yes or no? In this instance, yes. Because this is not merely— So if I were the petitioner and I said I attended St. Patrick's Church and it turned out I attended St. Thomas' Church, that alone in the government's view would be enough to deny relief? Well, I think in that example— Yes or no? Yes or no? If the testimony, the oral testimony of the applicant is to that effect, I think it may be difficult to defend an adverse credibility determination based entirely on a misstatement of the name of the church. But that's not what we have here. We have a letter that's purporting to be from the individual who could vouch for Mr. Kumar's alleged conversion to Christianity. I put that on the more serious side. But in addition to the name of the church, didn't he refer to the spiritual leader as pastor when it was a reverend? Is that a serious inconsistency? That was, I think, not one of the major inconsistencies that the agency pointed out. So to follow on along my colleague's question to your friend on the other side, what do we do in that circumstance? Say we determine that those two things you and I just talked about are minor and not a reason to deny relief, but there are some serious statements in the record which would allow relief. What should we do? Well, we would respond to that, that because substantial evidence supports the credibility determination, irrespective of— Well, let me ask you more specifically. In the situation my colleagues were talking about, what's the case law say about, you know, if there are a couple of bad reasons and a couple of good reasons, does the case law say that the two good ones are good enough to affirm or it should be remanded for reconsideration? Well, I believe that that issue was most recently addressed in the Colulu decision that came out of—that this court issued a few months ago, where it reaffirmed the principle that an adverse credibility determination is not a matter of balancing the inconsistent aspects of the testimony against the aspects of the testimony that are consistent. It's not a balancing exercise for the court to reassess, but rather it is subject to the very deferential substantial evidence standard of review, where, as in this case, there is clear record support for the—all of the inconsistencies that the agency highlighted in addition to the demeanor findings, which are reflected in the record, which the agency, the board cited to the specific portions of the hearing transcript where the petitioner was being nonresponsive. And those findings in and of themselves are entitled to significant deference, as this court has repeatedly affirmed. The IJ is in the best position to evaluate the demeanor and whether the petitioner is testifying truthfully. So in this particular case, it's not simply a matter of spelling discrepancies. We would point out that this is not just a matter of pressing the wrong letter on the keyboard, that in the document, the letter purporting to be from the pastor, there's the letterhead of the document and the stamp that's affixed to the document contain different spellings of the church. Now, this document doesn't purport to be a translated copy of a document that was issued in another language. The petitioner argued in his appeal to the board that he shouldn't be held responsible because he doesn't, his English language proficiency is limited. But ultimately, it's his burden to proffer credible evidence that he's entitled to the relief that he's seeking. And it's not sufficient for the applicant simply to say that, okay, I'm not aware of the contents of my documentary evidence. And I think if you look at the hearing transcript, Mr. Kumar even denies that there is a discrepancy in the spelling. So his testimony as a whole betrays a lack of familiarity with his documentary evidence. There's also the question regarding the timing of his conversion to Christianity, where he said that he received this letter from Pastor Thomas in early 2017, shortly after he joined the church. But the letter actually says that the pastor had known Mr. Kumar for a period of two years that he's been a member of the congregation. And this is at odds with the petitioner's statement on multiple occasions that he was first introduced to Christianity in early 2017, which would be immediately before this letter was supposedly written. So the agency properly relied on these discrepancies, which go to the heart of the petitioner's claim of religious persecution. And we submit that this constitutes substantial evidence supporting the credibility of determination. All right. Thank you. All right. Thanks, counsel. Your Honor, I don't have anything else unless the court has questions for me. Nope. Nope. Very good. All right. Thank you both for your briefing and argument. This matter is submitted.
judges: HAWKINS, TASHIMA, OWENS